UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌──────────────────────────────────┐
│ USDS SDNY                          │
│ DOCUMENT                           │
│ ELECTRONICALLY FILED               │
│ DOC #: _____                     │
│ DATE FILED: 2-28-14                │
└──────────────────────────────────┘
```

JOSE LUIS PEREYRA,

                              Plaintiff,

        -v-

FANCY 57 CLEANERS, INC., *et al.*,

                              Defendants.

No. 11 Civ. 1522 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

The Court presumes the parties' familiarity with the underlying facts and procedural history of this case and offers only a short summary of each for purposes of these motions.  On June 28, 2012, a jury found Fancy Harlem Cleaners, Inc. ("Harlem"), Fancy Mayflower Cleaners, Inc. ("Mayflower"), Fancy 57 Cleaners, Inc. ("Fancy 57"), and Dae Kyung Bae ("Bae," and collectively with the corporate Defendants, "Defendants") liable for failing to pay Plaintiff Jose Luis Pereyra ("Plaintiff"), a former employee, at a rate consistent with state and federal laws regarding overtime pay and with state laws regarding the minimum wage and spread of hours.  On March 20, 2013, the Court denied Defendants' post-trial motion for judgment as a matter of law and directed the clerk of the court to enter judgment for $15,554.61 against Defendants.  (Doc. No. 97.)  That judgment was entered on March 22, 2013.  (Doc. No. 98.)  Now before the Court is (1) Defendants' motion for a new trial, pursuant to Federal Rule of Civil Procedure 59(a); (2) Plaintiff's motion to amend the judgment, pursuant to Federal Rule of Civil Procedure 59(e); and (3) Plaintiff's motion for attorneys' fees, pursuant to 29 U.S.C. § 216(b) and New York Labor Law § 663.  For the reasons set forth below, Defendants' motion for a new trial is denied, Plaintiff's motion to amend the judgment is granted, and Plaintiff's motion for attorneys' fees is granted in part and denied in part.

## I. MOTION FOR A NEW TRIAL

### A. Legal Standard

"[J]ury verdicts should be disturbed with great infrequency." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012). Nevertheless, "[a] court may grant a new trial . . . if the verdict is against the weight of the evidence." *Id.* at 417. "A verdict is against the weight of the evidence if and only if it is seriously erroneous or a miscarriage of justice." *DePascale v. Sylvania Elec. Prods., Inc.*, 510 F. App'x 77, 78 (2d Cir. 2013) (internal quotation marks omitted). Moreover, although a court "is free to weigh the evidence [it]self, and need not view [the evidence] in the light most favorable to the verdict winner," *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998), the "court should only grant [a new trial] when the jury's verdict is egregious . . . [and] should rarely disturb a jury's evaluation of a witness's credibility," *id.* (internal quotation marks and citations omitted). In addition, a court must order a new trial "[i]f the jury's answers [to special interrogatories] cannot be harmonized rationally." *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 82 (2d Cir. 2006) (internal quotation marks omitted). However, courts must "adopt a view of the case, if there is one, that resolves any seeming inconsistency between the jury's answers." *Crockett v. Long Island R.R.*, 65 F.3d 274, 278 (2d Cir. 1995) (internal quotation marks omitted). Unless the jury's answers are "irreconcilably" or "ineluctably inconsistent," the verdict should stand. *Cash v. Cnty. of Erie*, 654 F.3d 324, 343 (2d Cir. 2011). "The moving party bears the burden of proving that . . . a new trial is warranted." *Allam v. Meyers*, 906 F. Supp. 2d 274, 281 (S.D.N.Y. 2012).

### B. Discussion

Defendants argue that a new trial is necessary because (1) the jury's findings on numerous issues were against the weight of the evidence and (2) the jury's answers to the special interrogatories on damages were inconsistent. The Court addresses each argument in turn.

2

1. The Juries Findings Were Not Against the Weight of the Evidence

Defendants argue that five findings made by the jury were against the weight of the evidence. Specifically, Defendants challenge the jury's finding that: (1) Plaintiff was paid below the state minimum wage; (2) Plaintiff was not properly paid for overtime; (3) Defendants were joint employers of Plaintiff; (4) Defendants acted willfully; and (5) Plaintiff worked as much as 45 hours per week.

### a. Minimum Wage

According to Defendants, "[i]t is indisputable that Plaintiff received full New York state minimum wage . . . during his employment," and that the jury's finding that Defendants failed to pay minimum wage was against the weight of the evidence. (Doc. No. 112 ("Def. New Trial Mem.") at 3.) The Court disagrees.

Plaintiff testified that he was paid every two weeks, partly by check and partly in cash. (July 26 Tr. at 44:11–45:11.) He was a paid a total of $643 every two weeks ($321.50 per week) before July 2009, and he was paid a total of $668 every two weeks ($334 per week) after July 2009. (*Id.* at 45:12–20; *see also* Decl. of Samuel Chuang, dated May 3, 2013, Doc. No. 113 ("Chuang Decl."), Ex. B (copies of the checks given to Plaintiff).)    Plaintiff also testified that he generally was at work 70 hours per week (July 26 Tr. at 42:20–21) with no breaks other than restroom breaks and a lunch hour (*id.* at 84:16), meaning he worked approximately 64 hours per week. He also testified that he sometimes left work early to run errands or go to school. (*Id.* at 84:24–86:3.) The Court finds that the jury could have believed all of this testimony without "serious erro[r]," even if other witnesses testified to the contrary. *See Raedle*, 670 F.3d at 418–19 ("[W]here, as here, a verdict is predicated almost entirely on the jury's assessments of credibility, such a verdict generally should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of justice.").

The Court instructed the jury that they should calculate the wage Plaintiff was paid by dividing his pay per week by his hours worked per week. (July 28 Tr. at 289:22–25.)  Applying that instruction, if the jury believed Plaintiff's testimony, they could have found that he was paid as little as $5.02 per hour before July 2009 and $5.22 per hour after July 2009.  As the New York minimum wage was $7.15 before July 2009 and $7.25 after July 2009 (July 28 Tr. at 296:6–14), that result would support a finding that Plaintiff was not paid minimum wage.  Indeed, the jury could have found a minimum wage violation even if they believed that Plaintiff worked only 45 hours per week before July 2009 and 47 hours per week after July 2009.  As such, the Court determines that the jury's verdict on this issue was not seriously erroneous or a miscarriage of justice.[1]

### b.  Overtime

Defendants argue that the jury could not have found an overtime violation because Plaintiff did not assert a regular rate of pay. (Def. New Trial Mem. at 5.) This argument is incorrect as a matter of law. The Court instructed the jury that the regular rate of pay was the higher of Plaintiff's hourly wage and the minimum wage. (July 28 Tr. at 293:23–294:2.) Because the jury concluded that Plaintiff was paid below the minimum wage, the regular rate of pay would be the minimum wage. Thus, the jury could have determined the regular rate of pay without any input from Plaintiff

---

[1] It should be noted that the jury found no violation of the federal minimum wage, which was below the New York minimum wage before July 2009. (*Compare* July 28 Tr. at 289:3–11 (stating that the federal minimum wage was $5.85 before July 2008, was $6.55 from July 2008 to July 2009, and $7.25 after July 2009), *with id.* at 296:6–14 (stating that New York minimum wage was $7.15 before July 2009 and $7.25 after July 2009).) Nevertheless, the jury could have found a number of hours worked that would lead to an imputed wage above the federal level but below the New York level. For instance, if the jury had found that Plaintiff had worked between 45 and 49 hours per week before July 2009, he would have suffered a state minimum wage violation but not a federal minimum wage violation. Moreover, federal law, unlike New York law, would have allowed a tip credit in this case. (*Compare* July 28 Tr. at 290:9–291:6, *with id.* at 296:21–297:4.) Thus, the jury could have believed that Plaintiff received tips that made up for any payment below the federal minimum wage but not the state minimum wage.

4

on this issue. As such, the Court determines that the jury's verdict on this issue was not seriously erroneous or a miscarriage of justice.

### c.  Joint Employment

Defendants argue that the jury's findings of joint employment are against the weight of the evidence for Defendants Mayflower, Harlem, and Bae. Once again, the Court disagrees.

"For a joint employment relationship to exist, the alleged employer must have control over the terms and conditions of the employee's work and employment." (July 28 Tr. at 284:3–5.) Factors determining control include: "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Velez v. Sanchez*, 693 F.3d 308, 326 (2d Cir. 2012) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). "When making the determination of whether a purported joint employer determined a plaintiff's rate and method of payment, 'the key question is whether [the employer] had the authority to sign paychecks throughout the relevant [employment] period.'" *Hugee v. SJC Grp., Inc.*, No. 13 Civ. 0423 (GBD), 2013 WL 4399226, at *7 (S.D.N.Y. Aug. 14, 2013) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 140 (2d Cir. 1999)); *see also Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 128 (S.D.N.Y. 2011) (considering whether the alleged joint employer issued the employee's paychecks). Here, the Court has previously held that there was "ample evidence from which the jury could have concluded that Bae" was a joint employer. *Pereyra v. Fancy 57 Cleaners, Inc.*, No. 11 Civ. 1522 (RJS), 2013 WL 1385205, at *6 (S.D.N.Y. Mar. 20, 2013). Moreover, the evidence at trial also supported a finding that all three corporate Defendants were part of a unified operation, that all three were controlled by Bae, and that Bae acted as the corporate Defendants' agent. (*See* July 27 Tr. at 39:5–41:19, 105:7–106:4); *Pereyra*, 2013 WL 1385205, at *6. The evidence also demonstrated that Defendants Harlem

5

and Mayflower each regularly issued Plaintiff's paychecks. (*See* Chuang Decl. Ex. B.) With this evidence, the Court determines that the jury's verdict on the issue of joint employment was not seriously erroneous or a miscarriage of justice.

### d. Willfulness

A violation of the FLSA is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The jury heard testimony that Defendant Bae, who was the general manager of all of the corporate defendants (July 27 Tr. at 74:20–22), was aware of the existence of laws regulating employee wages (*id.* at 75:5–7). Defendant Bae also testified that he knew about the substance of these laws before he hired Plaintiff and that he informed Plaintiff of Plaintiff's rights under those laws when Plaintiff began work. (*Id.* at 51:22–52:6; 53:7–54:19; 84:18–86:6.) These facts support the jury's findings that Defendant Bae was aware of the laws and knew that underpaying Plaintiff violated those laws. As such, the jury's verdict that Defendants acted willfully is not seriously erroneous or a miscarriage of justice.

### e. Plaintiff's Hours

Defendants next argue that the jury seriously erred to the extent that it believed Plaintiff's version of the hours he worked over Defendants' version. (Def. New Trial Mem. at 15.) Although the jury was not asked to make a specific finding of the hours worked by Plaintiff, its findings on damages for minimum wage and overtime imply that they did not credit Defendants' version. Based on the Court's own observations of the trial, it finds that the jury was entirely correct to do so – Plaintiff was a more credible witness than any witness relied on by Defendants. Moreover, the jury is entitled to make credibility determinations and those determinations are entitled to deference. *DLC Mgmt. Corp.*, 163 F.3d at 134. As such, any finding by the jury crediting Plaintiff's testimony over Defendants' is not seriously erroneous or a miscarriage of justice.

6

2. Alleged Inconsistency in the Verdict

Defendants' further contend that a new trial is necessary because the jury's findings on damages are inconsistent with one another. Specifically, they claim that the damages calculated for each claim are inconsistent because there is "no fixed set of: (a) hours worked; (b) regular rate of pay; and (c) amount actually paid, that can harmonize these findings and awards rationally." (Def. New Trial Mem. at 16.) There are two flaws in this argument. First, Defendants did not raise the issue of verdict inconsistency before the jury was released, and as a result their objection to any inconsistency is waived. *See Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 83 (2d Cir. 2006) ("It is well established that a party waives its objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to the excusing of the jury."); *DiBella v. Hopkins*, 403 F.3d 102, 117 (2d Cir. 2005) ("It is well settled that if a party does not challenge the consistency of jury verdicts while the jury is still empanelled, the objection is waived."). Defendants claim that they had no opportunity to object, but that claim is wholly unsupported by the record. Defendants could have, for instance, made a motion or requested a sidebar conference after the verdict was read but before the jury was polled. They did not. Moreover, after the jury read its verdict, the Court instructed the jury to return to the jury room and not leave. (July 28 Tr, at 325:13–326:18.) The Court then discussed post-trial briefings and motions with the parties, none of whom in any way raised an issue of inconsistency in the verdict. (*Id.* at 326:22–329:7.) The parties were aware that the jury was still available and could have been asked to resolve any inconsistency, as counsel for both parties requested the opportunity to meet with the jurors and receive feedback. (*Id.* at 316:2–18, 328:2–5, 328:22–329:7.) Thus, Defendants had a full opportunity to object to any inconsistency, and by not doing so, waived that argument.

Second, even if Defendants had not waived their argument, Defendants do not meet their burden of establishing that the jury's findings on damages are "irreconcilably" or "ineluctably

7

inconsistent." *Cash*, 654 F.3d at 343. As noted above, Defendants state that there is "no fixed set of: (a) hours worked; (b) regular rate of pay; and (c) amount actually paid, that can harmonize these findings and awards rationally." (Def. New Trial Mem. at 16.) However, there is no requirement that the jury provide fixed values for any of those quantities, or that it otherwise explain its damages award. Moreover, there was evidence that Plaintiff's pay changed over time, that the time he left work varied throughout his employment, that he sometimes took vacations, and that he was sometimes late to work. (July 26 Tr. at 84:24–86:3; July 27 Tr. at 92:7–93:5.) The jury was not asked to find specific hours and wages for each week, and Defendants have not established that there is no set of hours worked for each week and pay rate for each week that could harmonize the jury's findings. (Def. New Trial Mem. at 17 (noting that too many variables are unknown to determine exactly how the jury made its calculations)). As such, the Court cannot say that the jury's verdict is logically impossible, and therefore the verdict must stand.[2]

## II. PLAINTIFF'S MOTION TO AMEND THE JUDGMENT

### A. Legal Standard

"The standards governing a motion for reconsideration and a motion to amend a judgment are the same." *Mediterranean Shipping Co. S.A. v. Ningbo Toptrade Imp. Exp. Co. Ltd.*, No. 06 Civ. 3391 (MGC), 2010 WL 4451812, at \*1 (S.D.N.Y. Nov. 2, 2010); *accord MJAC Consulting, Inc. v. Barrett*, No. 04 Civ. 6078 (WHP), 2006 WL 2051129, at \*2 (S.D.N.Y. July 24, 2006). A motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be

---

[2] In their reply memorandum, Defendants argue that the jury's finding on damages for the spread-of-hours claim is not supportable by the evidence. (Doc. No. 120 at 8–9.) "It is well established, however, that a court should not 'consider arguments that are raised for the first time in a reply brief.'" *Mateo v. Bristow*, No. 12 Civ. 5052 (RJS), 2013 WL 3863865, at \*8 (S.D.N.Y. July 16, 2013) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 n.5 (2d Cir. 2006)).

expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). "Alternatively, a motion for reconsideration may be granted to 'correct a clear error or prevent manifest injustice.'" *Banco de Seguros Del Estado v. Mutual Marine Offices, Inc.*, 230 F. Supp. 2d 427, 428 (S.D.N.Y. 2002) (quoting *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)). "The standard for reconsideration is strict and the decision is 'within the sound discretion of the district court.'" *Atl. Recording Corp. v. BCD Music Group, Inc.*, No. 08 Civ. 5201 (WHP), 2009 WL 2046036, at *1 (S.D.N.Y. July 15, 2009) (quoting *Colodnev v. Continuum Health Partners, Inc.*, No. 03 Civ. 7276 (DLC), 2004 WL 1857568, at *1 (S.D.N.Y. Aug.18, 2004)).

## B. Discussion

A prevailing plaintiff in a wage and hours suit may be entitled to liquidated damages pursuant to 29 U.S.C. § 216(b) and New York Labor Law § 663 and to prejudgment interest pursuant to New York C.P.L.R. § 5001. Plaintiff raised the issue of liquidated damages immediately after the jury announced its verdict (July 28 Tr. at 328:6–21), but the Court did not address this issue before directing entry of judgment on the jury's verdict on March 20, 2013. Therefore, it is proper for the Court to amend the judgment to include liquidated damages and prejudgment interest, to the extent these additional damages are appropriate.

In determining whether and to what extent these damages are appropriate, the Court must address three issues: first, whether Plaintiff's motion was timely made; second, whether Plaintiff is entitled to liquidated damages and prejudgment interest; and third, what the appropriate amount of liquidated damages and prejudgment interest is. The Court addresses each in turn.

### 1. Timeliness

A motion to amend the judgment must be made within 28 days of the entry of judgment. Fed. R. Civ. P. 59(e). To make a motion, a party must make a written submission that states the

relief sought and the grounds for seeking the court's order.  Fed. R. Civ. P. 7(b).  Here, as required

by the Court's Individual Rules of Practice, Plaintiff submitted a pre-motion letter addressing his

anticipated motion to amend the judgment on April 15, 2013, twenty-four days after the entry of

judgment.  (*See* Doc. No. 107.)  That pre-motion letter meets the requirements for a motion and

adequately put Defendants on notice of the issue.  Accordingly, the Court deems the motion to have

been made on April 15, 2013 and determines that the motion was timely made.

### 2.  Plaintiff's Entitlement to Additional Damages

Here, the jury found that all of the Defendants willfully violated the law in Counts 2, 3, 4,

and 5.  As discussed above, the Court has no basis to disturb those findings.  Because of that finding,

Plaintiff is entitled to liquidated damages.  *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366

(2d Cir. 2011); *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 22 (2d Cir. 2002).  To the

extent Defendants now take issue with the Court's instructions on willfulness, the Court finds that

this argument has been waived.  *See Lavoie v. Pac. Press & Shear Co.*, 975 F.2d 48, 55 (2d Cir.

1992) ("Failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring

results in a waiver of that objection.").  Moreover, the law is clear that for claims under New York

law "prejudgment interest and liquidated damages may both be awarded."  *Heng Chan v. Sung Yue

Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at *9 (S.D.N.Y. May 8, 2007).

### 3.  Calculating Additional Damages

Under the law as it existed at the time of the violations, Plaintiff is entitled to 100% liquidated

damages on his FLSA claims and 25% liquidated damages on his New York Labor Law claims.  To

the extent a state and federal law claim address the same violation, it is appropriate to award both

state and federal liquidated damages because federal liquidated damages serve a compensatory

function and state liquidated damages serve a punitive function.  *See Zheng v. Liberty Apparel Co.,

Inc.*, No. 99 Civ. 9033 (RJS), 2009 WL 1383488, at *3 (S.D.N.Y. May 18, 2009).  Nevertheless,

10

pure compensatory damages – as opposed to liquidated damages – can only be awarded once. Thus, a plaintiff can receive full compensation and up to 125% in liquidated damages, but no more. In addition, a plaintiff can recover prejudgment interest on his New York claims, but not his federal claims, and not on liquidated damages. *See Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 92 (E.D.N.Y. 2012); *Maldonado v. La Nueva Rampa, Inc.*, No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012) ("Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages."). Therefore, where a plaintiff recovers liquidated damages under both federal and state law, he cannot also recover prejudgment interest under state law. *Id.*

a. Overtime – Counts 2 and 4

The jury awarded Plaintiff $2,205.00 in compensatory damages for his federal overtime claims and $3,339.81 for his state overtime claims. For actual compensation, the federal overtime damages are necessarily included in the state overtime damages, so Plaintiff may receive only $3,339.81. For liquidated damages, Plaintiff is entitled to 100% of his federal damages (that is, $2,205.00) plus 25% of his total state damages (that is, $834.95). Plaintiff is also entitled to state prejudgment interest, but only on the actual damages for which he has not already received federal liquidated damages. *See Gunawan*, 897 F. Supp. 2d at 92. Thus, as Plaintiff received federal liquidated damages on $2,205.00 of his actual damages, he may receive prejudgment interest only on $1,134.81, equal to $3,339.81 minus $2,205.00. Prejudgment interest is calculated using a 9% per year rate, N.Y. C.P.L.R. § 5004, and "where damages are incurred at various times after the cause of action accrues, section 5001 [of the New York C.P.L.R.] grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 512 (2d Cir. 1994). Here, the Court finds that a reasonable date from which to award interest is January 11, 2009, the midpoint of Plaintiff's employment, or approximately five

11

years ago. (*See* Doc. No. 110 Ex. 3.) Thus, Plaintiff is entitled to five years of 9% interest on $1,134.81, equal to 45% of $1,134.81, or $510.66. *See Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998) (holding that prejudgment interest under New York law is calculated on a simple interest basis, as opposed to a compound interest basis). Accordingly, in total, Plaintiff is entitled to $3,339.81 plus $2,205 plus $834.95 plus $511.66, or $6,890.42 on his overtime claims.

b. New York Minimum Wage – Count 3

The jury awarded Plaintiff $2,327.55 in compensatory damages for his state minimum wage claim. For liquidated damages, he is entitled to 25% of that amount, equal to $581.89. For prejudgment interest, using January 11, 2009 as a reasonable midpoint, Plaintiff is entitled to 45% of his damages, equal to $1,047.40. Defendant argues that the reasonable date for calculating interest should be later than January 11, 2009 because the state minimum wage increased in July 2009 and therefore the bulk of the damages found by the jury must have been incurred after that date. (Doc. No. 117 at 8.) However, Plaintiff's wages also went up in July 2009, and there is no reason to believe that these two changes did not cancel out. *See Conway*, 16 F.3d at 512 (noting that "courts [have] wide discretion in determining a reasonable date from which to award pre-judgment interest"). Accordingly, in total, Plaintiff is entitled to $3,956.84 on this claim.

c. New York Spread of Hours – Count 5

The jury awarded Plaintiff $7,682.25 in compensatory damages for his state spread of hours claim. For liquidated damages, he is entitled to $1,920.56. For prejudgment interest, he is entitled to $3,457.01. Accordingly, in total, Plaintiff is entitled to $13,059.82 on this claim.

d. Total on All Claims

Adding all of these up, the Court determines that Plaintiff is entitled to an amended judgment of $23,907.08.

12

III. ATTORNEYS' FEES

A. Legal Standard

"Under the FLSA and N.Y. Labor Law, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs." *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011). In the Second Circuit, fee awards are calculated using the "presumptively reasonable fee" approach. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 189 (2d Cir. 2008). This method "boils down to [asking] what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted). To calculate the presumptively reasonable fee, a court should determine a reasonable hourly rate and a reasonable number of hours spent, and then multiply them together. *See Kingvision Pay-Per-View Ltd. v. Zalazar*, 653 F. Supp. 2d 335, 343 (S.D.N.Y. 2009). "In making [its reasonableness determinations], the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005). In addition, a district court may "reduce the fee awarded to a prevailing plaintiff below the [presumptively reasonable fee] by reason of the plaintiff's partial or limited success." *Kassim v. City of Schenectady*, 415 F.3d 246, 256 (2d Cir. 2005). Importantly, however, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

B. Discussion

1. Reasonable Fee

Plaintiff proposes a fee of $450 per hour for William Cafaro and $250 per hour for Andreas Geroulakis. (Doc. No. 106 ("Pl. Fees Mem.") at 3.) Mr. Cafaro has 30 years of litigation experience,

13

but had only two years of FLSA experience when this suit was initiated. (Aff. of William Cafaro, dated Apr. 15, 2013, Doc. No. 104 ("Cafaro Aff."), ¶¶ 5–6.) Mr. Geroulakis was an associate working for Mr. Cafaro and graduated from law school in 2007. (Aff. of Andrew Geroulakis, dated Apr. 14, 2013, Doc. No. 105 ("Geroulakis Aff."), ¶¶ 1, 3.) Based on the Court's consideration of these attorneys' experience, the complexity of this case, and the quality of the attorneys' work-product, it determines that the proposed rates are high. *Compare Angamarca v. Pita Grill 7 Inc.*, No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *11 (S.D.N.Y. Aug. 2, 2012) ("Courts in this District have determined that a fee ranging from $250 to $450 per hour is generally appropriate for *experienced* civil rights and employment law litigators." (emphasis added)), *with id.* (awarding $200 per hour to an attorney who graduated law school in 2006), *and Gunawan*, 897 F. Supp. 2d at 94 (awarding a partner with five years of FLSA experience $275 per hour and an associate with three years of FLSA experience $225). As such, the Court instead awards Mr. Cafaro $300 per hour and Mr. Geroulakis $200 per hour.

## 2. Reasonable Hours

Plaintiff argues that Mr. Cafaro reasonably worked 108 hours and that Mr. Geroulakis reasonably worked 116.7 hours. (Pl. Fees Mem. at 2.) These hours are supported by detailed time records. (*See* Cafaro Aff. Exs. 1, 2.) In response, Defendants make fourteen objections, most of which are frivolous and nit-picking – for instance, complaining that Plaintiff's attorneys spent 9.75 in trial preparation, that Plaintiff's attorneys spent 3.2 hours in their initial meetings with Plaintiff, that Mr. Cafaro spent 1.3 hours reviewing the Court's order denying Defendants' motion for judgment as a matter of law, and that Mr. Cafaro spent 4 hours reviewing the dispute and motion papers between Defendants and their former counsel in this case. (Doc. No. 114 ("Def. Fees Opp.") at 7–11.) The Court finds no merit to these arguments and concludes that the attorney hours spent on these activities were reasonable. Defendants do, however, raise one legitimate point. The Court

14

agrees that 37 hours is an excessive amount of time to spend on a pre-trial order (*id.* at 10; Cafaro Decl. Ex. 2. at 3.)  Accordingly, the Court reduces the reasonable hours worked by Mr. Geroulakis by 17 hours, bringing his total down to 99.7 hours.

### 3.  No Reduction for Limited Success

Defendants also argue that the fee award should be reduced because of Plaintiff's limited success. (Def. Fees Opp. at 12–14.) The Court disagrees. Although Plaintiff was not successful on his federal minimum wage claim, he prevailed on all of his other claims. The federal minimum wage claim did not add significant costs or efforts beyond what would have been expended on the other claims. Moreover, Plaintiff had been willing to settle this case for $17,500, inclusive of fees and costs, but Defendants rejected this offer and insisted on going to trial. (Doc. No. 116 at 3.) As a result, Plaintiff will now receive approximately $24,000 in damages and $60,000 in fees and costs. By any measure, Plaintiff's success was significant and total. As such, no reduction for limited success is appropriate.

### 4.  Calculation

Multiplying the reasonable hourly rates by the reasonable hours, the Court determines that Plaintiff is entitled to $19,940 in fees for Mr. Geroulakis, $32,400 in fees for Mr. Cafaro.

### 5.  Costs

Plaintiff seeks $3,409 in costs.[3] (Cafaro Aff. ¶ 7.) Defendants object to some of these costs on the ground that they are not taxable under Local Civil Rule 54.1(c)(2). (Def. Fees Opp. at 12.) However, whether a cost would normally be taxable or not, any cost expended by an attorney that would normally be billed to a client is recoverable. *See Moon v. Gab Kwon*, No. 99 Civ. 11810

---

[3] There is an inconsistency between what Plaintiff requested in his memorandum and in the Cafaro Affidavit. In his reply, Plaintiff clarifies that the appropriate request is for $3,409. (Pl. Fees Reply at 7.)

(GEL), 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002).  As such, the Court determines that all $3,409 in costs is appropriate.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT Defendants' motion for a new trial is DENIED.  IT IS FURTHER ORDERED THAT Plaintiff's motion to amend the judgment is GRANTED.  The clerk of the court is respectfully directed to amend the judgment to reflect damages of $23,907.08.  IT IS FURTHER ORDERED THAT Plaintiff's motion for costs and attorneys' fees is granted in part and denied in part.  The clerk of the court is respectfully directed to enter judgment in the amount of $55,749 for these costs and fees.  The clerk of the court is also respectfully directed to terminate the motions pending at docket numbers 103, 108, and 109.

SO ORDERED.

Dated:      February 27, 2014
            New York, New York

                                            _____
                                            RICHARD J. SULLIVAN
                                            UNITED STATES DISTRICT JUDGE